UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:25-CR-003-02 LPR |
| | ) | |
| KENNETH WAYNE FOWLER | ) | |

**MOTION TO SUPPRESS**
**AND MEMORANDUM IN SUPPORT**
**(Trial Date July 28, 2026)**

Defendant moves to suppress the search of the hotel rooms in this case what was found in them, particularly the suitcase full of drugs in room 168 or room 140 of the Brinkley Motel 6 on July 22, 2024 as a violation of the Fourth Amendment and Fifth Amendment's due process clause, and the due process clause of the Fourteenth Amendment if necessary, since state officers are involved. The first search of room 168 and the suitcase inside the room was warrantless. We claim the purported justification of exigency was completely specious. Shortly thereafter, a later warrant was issued as a direct result of the warrantless search. The good faith exception, attenuation, and the independent source rule do not apply.

*Summary of the burdens:* The government carries the burden on the justification for the warrantless search, the independent source doctrine, attenuation, and the good faith exception. This involves a search warrant after a warrantless search of a suitcase. Search warrants are presumed valid, but not in the face of a *Franks* challenge with an offer of proof. The defense carries the burden on showing standing and a *Franks* violation.

The government, we submit, will fail on its burdens, and we prevail on ours. The motion to suppress should be granted.

*Exhibits:* DX F-1 (911 call note, 10:37 am), DX F-2 (four bodycam stills; officer in room at

10:44 am), DX F-3 (search warrant, affidavit, return).

## I. Introduction

This drug conspiracy is alleged to have occurred between July 21–24, 2024. (Doc. 3) The searches at issue occurred July 22, 2024 in Brinkley at the Motel 6. The search warrant and its affidavit (DX F-3), and bodycam stills (DX F-2) are attached and incorporated. The videos and an audio of the warrantless search of room 168 and the suitcase will be shown at the hearing.

Defendant Taylor was arrested first and appeared alone in state court. (Doc. 39) His state case was 48CR-24-77, showing an offense date of July 22, 2024. It was nolle prossed May 21, 2025 in favor of this prosecution.

The indictment was filed April 1, 2025. (Doc. 3) Defendant didn't know and wasn't arrested until November 4, 2025 where he lives in Delaware. (Doc. 39) His first appearance here was November 18, 2025 (Doc. 46), and he was released pending trial. (Doc. 48)

Our trial is set for July 28, 2026. (Doc. 69)

## II. The Burden of Proof is on the Government

### A. Warrantless searches are presumptively unreasonable.

This is first a warrantless search, and warrantless searches of effects are presumptively unreasonable and invalid. *See, e.g., Ex parte Jackson,* 96 U.S. 727, 733 (1878); *McDonald v. United States,* 335 U.S. 451, 456 (1948); *United States v. Van Leeuwen,* 397 U.S. 249, 251 (1970); *United States v. Ross,* 456 U.S. 798, 825 (1982). Searches of suitcases require a warrant because it is an "effect" under the Fourth Amendment. *United States v. Chadwick,* 433 U.S. 1 (1977); *Arkansas v. Sanders,* 442 U.S. 753 (1979); *see Smith v. Ohio,* 494 U.S. 541 (1990) (paper bag).

Defendant has the burden of going forward. *United States v. Marasco,* 487 F.3d 543, 547 (8th Cir. 2007) ("When the issue is whether challenged evidence is the fruit of a Fourth Amendment

violation, the defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence."). Showing a search was warrantless meets that burden.

The burden then shifts to the government to demonstrate why evidence illegally obtained should not be excluded. *United States v. Hastings,* 685 F.3d 724, 728 (8th Cir. 2012) (quoting *United States v. Riesselman,* 646 F.3d 1072, 1078 (8th Cir. 2011)) (noting that if defendant "comes forward with specific evidence demonstrating taint, the ultimate burden of persuasion to show the evidence is untainted lies with the government.").

Thus, "[t]he government bears the burden of establishing that an exception to the warrant requirement applies." *United States v. Hill,* 386 F.3d 855, 858 (8th Cir. 2004). *Accord: Carter v. United States,* 729 F.2d 935, 940 (8th Cir. 1984); *United States v. Kennedy,* 427 F.3d 1136, 1144 (8th Cir. 2005).

**B. Burden for independent source and attenuation**

The government carries the burden on showing lack of taint, independent source, and attenuation.

**1.** The independent source doctrine is an exception to the exclusionary rule. *Utah v. Strieff,* 579 U.S. 232, 238 (2016). The first attenuation case was *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392 (1920) ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all."). Next came *Wong Sun v. United States,* 371 U.S. 471, 488 (1963), the "fruit of the poisonous tree" case which required the government prove purging of the primary illegality for the government to get admissibility.

Under the independent source doctrine, the government bears the burden of showing "(1) law

enforcement would have sought a warrant to seize the evidence even if the unlawful search never occurred, and (2) probable cause supported the warrant after excluding all information obtained by the unlawful search." *United States v. Green,* 39 F.4th 510, 513 (8th Cir. 2022) (citations omitted).

The government cannot show the independent source doctrine saves this search warrant.

**2.** As to attenuation, if a defendant establishes a "but for" relationship between evidence and prior illegality, the burden shifts to the prosecution to show that the connection between the evidence and the illegality is so attenuated as to dissipate the taint. *United States v. =Swope,* 542 F.3d 609, 613–14 (8th Cir. 2008):

> A warrant obtained after an illegal search is not an independent source if either of the following are true: "if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry," and "if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray,* 487 U.S. at 542, 108 S.Ct. 2529. In other words, Murray asks the following two questions, both of which must be answered in the affirmative for the warrant to be an independent source: first, would the police have applied for the warrant had they not acquired the tainted information; and second, do the application affidavits support probable cause after the tainted information has been redacted from them.

The government cannot show that the attenuation doctrine saves this search, either.

### C. *Franks* doctrine is the antithesis of good faith.

The *Franks* doctrine is also invoked for false material statements in a warrant affidavit. "It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." *United States v. Leon,* 468 U.S. 897, 914 & n.12 (1984) ("Indeed, 'it would be an unthinkable imposition upon [the magistrate's] authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment.' [*Franks,*] 438 U.S., at 165.").

It is discussed below in Part V.

## III. Issues to be Decided

**A. Was this a purely private search? Questionable at best because the motel operator looks like a state actor.**

**1.** This ostensibly begins with an alleged private search, but there are two immediate problems: This involves a motel operator going into a hotel room rented for a week on the second day of the rental to look around, or so it appears in the police report, but there's a conflict between the police report and bodycams. The police report says the rental was to a truck driver and just for a day and implies the suitcase might have been abandoned. But later, when police are in the room, the motel operator says the room was rented for a week. Nothing adds up here. When the superior officer heard that, he said a warrant was required. The first officer put it wrong in the report. The facts of the occupancy are just wrong, and that's by the police.

Second, we question whether this was, in fact, a private search. This case has plenty of signs that the motel operator was working hand-in-glove with the police to provide them information about suspicious people so they could come to the motel under the guise of a private search on exigent circumstances.[1] He goes into the room, feels the suitcase, which everyone can see in the bodycam video is hard shelled and not flexible, and says, so the police say, he thought there were "body parts" inside based on feel. Impossible. From DX F-2-1:

[1] The 911 call note is DX F-1. Was there a reward system for the motel operator? Is he merely being a good citizen searching hotel rooms for the police? If so, how often? Daily, weekly, monthly?



**2.** If so, this is not a private search at all because the motel operator was a state actor. He's not a CI providing information; he's an adjunct police officer. We have legitimate questions: Is he paid? What other benefits flow to him? Defendant submits that there is a good faith basis for inquiring as to his status as a paid CI regularly providing information. That's his privilege. But, if it's true, the police should have told us all. And, it belies the exigency claim.

**3.** Finally, the search warrant for the bag issued an hour or more after it had already been searched. The first search is shown at 10:44 am per bodycam[2]; the search warrant issued at 11:55 but with "am/pm," and pm is circled (that may be a typo-type mistake; should it be am?). At any rate, the search warrant came after the initial search. The inventory says it was July 22, 2024, and no time is shown on the inventory. (DX F-3 p.4)

**B. No exigency**

The police reports relate what can only be described as a fantastic scenario that has all the

[2] Some images included below in DX F-2 which show time and date stamps.

signs of being contrived for attempting to show exigent circumstances.[3] Defendant submits the court should "refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections. In evaluating testimony we should not discard common sense and common knowledge." *People v. Garafolo,* 44 A.D.2d 86, 353 N.Y.S.2d 500, 502 (2d Dept. 1974).

### C. Source of information, and leading to a *Franks*[4] violation

**1.** There is a presumption of validity of a warrant under *Franks v. Delaware,* 438 U.S. 154, 171–72 (1978), and defendant may overcome it:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. ... Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

**2.** Who is the source of the false information in the police reports and search warrant affidavit? That is, the police say the motel operator says a truck driver left it behind and he felt the suitcase and there were pointy things inside that made him think there were body parts in the

---

[3] *See, e.g., United States v. Roberts,* 2012 U.S. Dist. LEXIS 42752 (E.D. Pa. Mar. 28, 2012) (officer's version is impossible and rejected); *United States v. Méndez-Rodríguez,* 2025 U.S. Dist. LEXIS 209314 (D.P.R. Oct. 22, 2025) (court just doesn't accept that the officer could see drugs in defendant's hand when he was running; after the stop, they were all in his pockets); *United States v. Hill,* 72 F. Supp. 3d 1111 (N.D. Cal. 2014) (officers' testimony was too embellished and padded to be believable).

[4] *Franks v. Delaware,* 438 U.S. 154 (1978).

suitcase.[5] When the first officer arrives, the bodycam shows the suitcase in the hotel room, standing on end in the bathtub, and we can all see it's hard shelled. But, wasn't the "truck driver" in room 140, not 168?

So, the story about feeling the suitcase and suspecting body parts? Obviously false, and it's also obvious that the first officer there should have known it. Yet, the police reports insist on the obviously contrived and false story about feeling he contents of the suitcase from outside despite it being hard shelled.

But who is the real source of false information? Who made it up? The motel operator or the officer or both? A hearing is necessary to flesh this out. The false information has to come from the officer, not the informant. *Franks, supra,* at 172. Here, the officer had to be aware, so the officer knowingly passed on false information. That satisfies the *Franks* burden, too.

**2.** Moreover, the initial police report claims that the room was rented by a truck driver for one night who left, implying the bag was abandoned. Not at all true. And, that's referring apparently room 140 (Fowler), not 168 (Sylvia) where the suitcase was found.

Once inside room 168, it's on bodycam per the hotel manager that the room had been rented for a week. A police supervisor shows up and immediately realizes that this is now a Fourth Amendment mess: "We need a warrant." Except the suitcase was already searched before that, and it was photographed open on the floor. Add to that, on the bodycam, we hear "turn off your body cam" after the mention of the need for a warrant. What are they hiding by turning off their bodycam?[6] This merits a hearing as to what they were planning to hide.

---

[5] *Bond v. United States,* 529 U.S. 334 (2000) (feeling a suitcase to determine the contents is a search).

[6] And this enables the court in evaluating the evidence to consider spoliation of evidence under the 2020 Due Process Protection Act and *Burris v. Gulf Underwriters Ins. Co.,* 787 F.3d 875,

**3.** All this is a basis for a *Franks* motion: a material false statement to get the warrant. The feeling of the suitcase? Obviously false because the officer can see that it's hard shelled and the contents cannot be felt. The claim of "body parts" is fantastic. The justification for the purported exigency has no basis at all.

**D.** And what's the exigency for alleged body parts, from a dead person? There's no claim that the alleged body parts are decomposing in the short time since they came in the room. No smell, no leakage, no nothing. Even so or if true, what's the exigency? There is none. It is, we submit, an effort at manufactured exigency. *See Mincey v. Arizona,* 437 U.S. 385 (1977) (murder scene search not exigency).

Arkansas held under the Fourth Amendment nearly 40 years ago that a dead body in a house based on an anonymous call was not exigency. *Mitchell v. State,* 294 Ark. 264, 272, 742 S.W.2d 895, 899 (1988):

> The police do not have a right to enter a residence to investigate the scene of a murder. The United States Supreme Court specifically rejected this idea in *Mincey v. Arizona,* 437 U.S. 385 (1977). In rejecting this exception to the requirement of a warrant, the court recognized the importance of the police's ability to respond to emergency situations, and pointed out that the fourth amendment does allow a warrantless entry and search when the police reasonably believe that someone within a residence is in need of immediate aid. However, as the court also pointed out, allowing warrantless searches of a murder scene would lead to allowing warrantless searches of all crime scenes. While this would simplify criminal investigations, it would not justify disregarding the fourth amendment. The state was unable to prove any exigent circumstances existed in this case.

---

879 (8th Cir. 2015) ("In order for an adverse inference instruction for spoliation of evidence to be warranted, a district court is required to make two findings: '(1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party.'" (citation omitted). *See also* AMI 4th 106. There is no Eighth Circuit Model Instruction on spoliation.

## IV. Standing; Fourth and Fifth Amendments[7]

Defendant has pled not guilty of conspiracy to possess the drugs in this case. He asserts two alternate theories for standing:

### A. Fourth Amendment standing

Defendant arrived at the motel and rented room 140 two hours before Ms. Sylvia arrived, and she rented room 168. He came outside and helped her unload her vehicle, including the hard shelled suitcase at issue. He put it indoors in the "ice room" until she secured her room, and then took it to room 168 for her and put it inside for her.

The police narrative says from the detective says that they believe defendant spent the night in room 168. That admission from the officers gives him guest standing over the room and contents. *Minnesota v. Olson,* 495 U.S. 91 (1990); *United States v. Gamez-Orduno,* 235 F.3d 453 (9th Cir. 2000) (overnight guest had standing per se).

### B. Fifth Amendment "standing"

Alternatively, defendant also pleads Fifth Amendment due process[8] as form of standing to challenge the search. That is: the government's conduct is so outrageous in this search that it should not be able to pursue this case at all.

Due process permeates the criminal justice processes. *See, e.g., Rochin v. California,* 342 U.S. 165, 172 (1952) (obtaining evidence from the person by outrageous conduct); *Hampton v. United States,* 425 U.S. 484 (1976) (supplying CI with drugs for sale to defendant was outrageous and violated due process).

---

[7] Defendant can testify to standing without it being used against him at trial, unless he contradicts the suppression hearing testimony at trial. *Simmons v. United States,* 390 U.S. 377, 391 (1968); F.R.E. 104(c).

[8] Or Fourteenth Amendment due process if the government insists.

For further example, prosecutors have a due process duty to correct false evidence. *Mooney v. Holohan,* 294 U.S. 103 (1935); *Alcorta v. Texas,* 355 U.S. 28 (1957); *Napue v. Illinois,* 360 U.S. 264 (1959). They cannot also present inconsistent theories between two trials of co-conspirators over who was the shooter without denying due process. *Bradshaw v. Stumpf,* 545 U.S. 175 (2005). Finally, manufactured evidence violates due process. *See, e.g., Winslow v. Smith,* 696 F.3d 716, 732 (8th Cir. 2012).

Then there's the venerable *Brady* doctrine, where due process is violated by the prosecution withholding exculpatory evidence so the trial was based on false evidence. *Brady v. Maryland,* 373 U.S. 83 (1963); *Kyles v. Whitley,* 514 U.S. 419, 437–38 (1995) (the "prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police"). We also have the Due Process Protection Act, Pub. L. No. 116-182, 134 Stat. 894 (2020), which adds to F.R.Crim.P. 5(f)(1) the warning to the government of its disclosure obligations, and it can include adverse jury instructions. (Doc. 45)

The *Franks* doctrine, already mentioned, holds that arrest and search warrants can't be based on fraud. *Franks v. Delaware, supra.*

## V. *Franks* offer of proof; defendant meets his burden

*Franks* requires an offer of proof. The affidavit for search warrant is attached in DX F-2, and we've compared it to the reports in this submission.[9]

**A.** All things considered on this *Franks* challenge, defendants are entitled to a hearing on who said what, what happened, the reckless disregard or outright falsity of not telling the judge issuing the search warrant that the feeling the suitcase was utterly impossible. There is also the lurking question of whether the motel operator is an adjunct police officer and state actor.

[9] The rest of the police reports are for cross-examination of the officers at the hearing.

There are two parts of the *Franks* challenge: Is the affidavit knowingly false or made with reckless disregard for the truth? Is it material to the finding of probable cause? This satisfies both parts. The case developed at the scene almost as if no one would ask questions of this narrative that makes almost no sense that led to the warrantless search of the suitcase in room 168.

**B.** Under ¶ 1 of the statement of probable cause (DX F-2), the motel operator (Mr. Patel) is reported to have said that a truck driver rented the room for one day. After he departed, they went to clean the room and found the suitcase in the bathtub. "Mr. Patel advised dispatch that he believed the bag possibly contained a dead body." In ¶ 2, the affiant states that Mr. Patel "felt the bag and believed he felt body parts inside the bag." The officer pulled it out of the tub and opened it. ¶ 2. We can see from the bodycam that the contents of the bag cannot be felt. That can only be made up.

In ¶ 3, Mr. Patel advises the superior officers that the room had been rented for a week, so Det. Griffith decides it's time to get a search warrant for the bag and room. Further in ¶ 3, Mr. Patel said defendant rented 140 and Sylvia rented 168 but they "were together."

**C.** *Length of rental:* There's a complete disconnect between what Mr. Patel is alleged to have said to the officer and what the real facts are. It could be the truck driver reference is to room 140 and not 168. And who made that mistake? Not the motel operator. Had to be the officer, if it is even a mistake. At the minimum, this is reckless disregard for the truth by the affiant as to the room being "abandoned," if that's what they mean, or the truth that it was rented for a week. Big difference: If a truck driver left it behind, that's likely abandonment. But there was no truck driver. Where did that even come from?

It has been clear for 60 years that there is a reasonable expectation of privacy in a hotel rooms, at least since *Stoner v. California,* 376 U.S. 483 (1964). Also, *Richards v. Wisconsin,* 520 U.S. 385 (1997), also involved a hotel room search. *See also City of Los Angeles, Calif. v. Patel,* 576

U.S. 409 (2015) (hotels not closely regulated industries, so records so not subject to warrantless administrative search).

**D.** *Feeling the bag itself:* That's impossible. Note also that the affidavit says not a word about the officer trying to confirm the feel of the bag. The affidavit should have said that "I saw the bag pulling it out of the tub, and feeling the bag for its contents is impossible."[10] Or, "I felt the bag and the contents were not at all discernable." That would have undermined the alleged probable cause. Based on all this, one could legitimately doubt that Mr. Patel said that at all.

**E.** *Alleged exigency:* The lack of alleged exigency has already been addressed. There simply isn't any, even if it's remotely believable that body parts were in the suitcase. This is not a welfare check on whether someone is alive and need of assistance. A report of a person or persons being dismembered and stored in a suitcase is not a welfare check to see if aid is appropriate. *See, e.g., Mitchell v. State, supra.*

**F.** The good faith exception does not apply to *Franks* violations because the establishing a *Franks* violation is the antithesis of good faith. *United States v. Leon, supra,* at 914.

**G.** *Johnson v. United States,* 333 U.S. 10, 13–14 (1948):

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

## CONCLUSION

The motion to suppress the search of the suitcase and rooms 168 and 140 should be granted.

---

[10] *See Bond,* n. 5, *supra.*

Respectfully submitted,

JOHN WESLEY HALL
Ark. Bar No. 73047
1202 Main St.; Suite 210
Little Rock, Arkansas 72202-5057
(501) 371-9131 | fax (501) 378-0888
e-mail: ForHall@aol.com
*Attorney for Defendant*

DEFENDANT'S EXHIBIT
NO. F-1
PENGAD 800-631-6989

# BRINKLEY POLICE DEPARTMENT
# RADIO DISPATCH LOG

| DATE:07/22/2024 | STATION: WNQH254 | SHIFT: 1st<br>TIME: 6a-6p |
|---|---|---|

**DISPATCHER:** Rochanda Harlin **Jailer:** Tonya Devoto

***OFFICERS: (210) Ofc Sutterfield (206)Cpl.Griffin ((213) Ofc. Scott***

**INMATES:** Mark Crawford, Dock Jordan, Ricardo Laureano, Charles Cooley,Gary Moffett, Zackery Jenkins, Jason Robertson

**Female- Jeannie Coyle, Tanisha Green**

| | | |
|---|---|---|
| [redacted] | | |
| 1037 | GI | MANAGER FROM MOTEL 6 CALLED 911 WHO THEN TRANSFERED THE CALL AND THE CALLER ADV THAT HE NEEDED AN OFC TO COME TO 1306 N MAIN HE ADV THAT HE HAD RENTED A ROOM AND THAT THIS MORNING WENT IN TO DO SOME CLEANING AND NOTICED A LARGE BAG IN THE SHOWER AND ON TOP OF THE BAG WAS SOME CLOTHES CALLER ADV THAT HE WAS NOT SURE WHAT WAS IN THE BAG BUT WANTED AN OFC TO COME OUT AND CHECK IT OUT |
| 1042 | 210 | ADV BE 97 |
| 1047 | 210 | ADV 206 TO 10-19 TO LOCATION |
| 1050 | 210 | ADV ROOM NO 168 |
| 1050 | 206 | ADV BE OUT AT MOTEL 6 ROOM 168 |
| 1055 | 206 | ADV TO CONTACT MORS TO SEE IF A DEPUTY COULD 10-19 TO HIS LOCATION |
| 1056 | GI | MORS ADV THAT 9702 WAS 10-19 TO 206 LOCATION |
| 1057 | GI | CALLER LASHIDA HARDIMAN ADV THAT SHE NEEDED TO SPEAK TO AN OFC ON S CHICAGO ST AND HUNG UP THE PHONE ... TRIED MAKING CONTACT WITH MS HARDIMAN ON SEVERAL ATTEMPTS WITH NEGATIVE CONTACT |
| 1103 | 204 | ADV BE OUT WITH 206 210 AND 213 AT MOTEL 6 |
| 1103 | GI | MS HARDIMAN CALLED BACK AND ADV SHE NEEDED TO SPEAK TO AN OFC MS HARDIMAN WAS ADV BY DISPATCH THAT THE OFC WAS ON ANOTHER CALL AND WHEN THEY GOT BACK IN SERVICE THEY WOULD BE THERE TO TALK WITH HER . MS HARDIMAN WENT TO CUSSING AND HOLLERING AT THE DISPATCH AND HUNG UP THE PHONE |
| 1130 | 204 | ADV IND TK433NTA |
| | | |

DEFENDANT'S EXHIBIT
NO. F-2

PENGAD 800-631-6989

1




2



3



4



DEFENDANT'S EXHIBIT NO. F-3

IN THE CIRCUIT COURT OF THE STATE OF ARKANSAS

FOR THE COUNTY OF **MONROE**

| | | |
|---|---|---|
| STATE OF ARKANSAS | ) | |
| | ) | SEARCH WARRANT |
| COUNTY OF **MONROE** | ) | Motel 6 |

Rooms 168 and 140
located at 1306 North Main Street in Brinkley Arkansas

To any Police Officer in the State of Arkansas Greetings;
You are hereby commanded to search the following in the County of **Monroe,** State of Arkansas for evidence of the crimes of **Possession of Controlled Substance.**

**YOU ARE COMMANDED** to execute this warrant on or before ____________________

____ This warrant is to be executed in the daytime 6:00a.m. to 8:00p.m.

____ This warrant may be executed at any time of the day or night because good cause has been established.

____ This warrant may be executed more than five (5) days, but not more than ten (10) days from its date of issuance.

Dated this 22nd day of July 2024, at 11:55 am/pm

John W Moyt

District Court Judge

IN THE CIRCUIT COURT OF THE STATE OF ARKANSAS

FOR THE COUNTY OF **MONROE**

STATE OF ARKANSAS )
) SS. AFFIDAVIT FOR SEARCH WARRANT
COUNTY OF **MONROE** )

Motel 6
Rooms 168 and 140
located at 1306 North Main Street in Brinkley Arkansas

**Introduction and Background**

I, Detective Christopher Griffin, after being first duly sworn upon oath, depose and say:

I am a **Detective** with the **Brinkley Police Department**, located in the County of **Monroe**, State of Arkansas. I am currently assigned full time as a **Detective** with the **Brinkley Police Department.** I have been assigned to investigate **Possession of Controlled Substance.** These offences occurred in the City Of Brinkley, Arkansas on or about July 22, 2024.

The facts set forth in this affidavit are based on the following: Information from Officer Alisha Sutterfield and Mr. Harshbhai Shaileshkumar Patel, the manager of the Motel 6 located in Brinkley Arkansas.

**Evidence to be Searched and Seized**

This application seeks permission to search the motel room for and seize evidence of the crimes described above, including all narcotics, paraphernalia, firearms, firearm accessories, ledgers, measuring scales or any items used in the selling or distribution of narcotics.

**Statement of Probable Cause**

On Monday July 22nd at approximately 10:37a.m, the police department received a call through 911 system from the manager, Mr. Harshbhai Shaileshkumar Patel, at Motel 6 located 1306 North Main Street in Brinkley Arkansas. Mr. Patel stated that a truck driver rented a room at the motel on the night before. When the truck driver left the Motel in the morning, Mr. Patel went to clean the room and observed a bag in the bathtub with clothing on top of it. Mr. Patel advised dispatch that he believed the bag possibly contained a dead body.

Officer Sutterfield arrived on scene at approximately 10:42a.m. Mr. Patel met Officer Sutterfield and took her to room 168, located on the south side of the motel on the top tier. Mr. Patel advised Officer Sutterfield that he felt of the bag and believed he felt body parts inside of the bag. Officer Sutterfield pulled the bag out of the tub and placed it on the floor, opening it. Inside of the bag was multiple large rock like items wrapped in plastic with what is believed to be coffee. There was also an air sealed bag containing what is believed to be marijuana.

Officer Sutterfield then contacted myself, Detective Griffin. Once I arrived on scene, I spoke with Mr. Patel who advised that a male and female rented the room for a week. I had Officer Secure the room, while I applied for a search warrant. Officer Sutterfield and Officer Tyler Scott stayed behind and

secured the scene and gathered information. Mr. Patel provided a guest registration slip where a female named Sylvia Melody Nicolee rented room 168 paying cash for the room. He also provided a photocopy of the her driver's license out of Deleware. Mr. Patel stated there was a man that was with her named Kenneth Fowler and he rented room number 140. Officers attempted to make contact with either subject at room 140 but were unable to make contact. Officer's noticed a odor of Marijuanna coming from room number 140. Mr. Patel advised that Ms. Nicole and Mr. Fowler were together.

**Records to be Searched and/or Seized**

All areas of the motel rooms including any place that can conceal narcotics, paraphernalia, firearms, firearm accessories, ledgers, measuring scales or any items used in the selling or distribution of narcotics. Rooms 168 & 140, Motel 6, 1306 N Main, Brinkley AR 72021 CVG JW

**Conclusion**

Based on the foregoing information, I have probable cause to believe that evidence of the crime(s) **Possession of Controlled Substance.** as set forth herein are currently within the property described above. I therefore respectfully request that a search warrant be issued authorizing the search for, seizure of the evidence maintain in the property.

**Detective Christopher Griffin #206**

**Brinkley Police Department**

Subscribed and sworn to before me this 22nd day of July, 2024.

District Court Judge
Brinkley Div. Monroe County, Arkansas

**IN THE DISTRICT COURT OF THE STATE OF ARKANSAS**

**FOR THE COUNTY OF MONROE**

**STATE OF ARKANSAS )**

**) SS. RETURN OF SEARCH WARRANT**

**COUNTY OF MONROE )**

**Motel 6**
**Rooms 168 and 140**
**1306 th Main Street in Brinkley Arkansas**

I, the undersigned police officer, executed the above search warrant on the 22nd day of July 2024. The findings are as followed:

1. 1-E78 78 Individually wrapped cellophane packages containing white crystal-like substances
2. E79 Two packages containing white crystal-like substance wrapped in black and clear vacuum sealed bag.
3. E80 Two brown square packages containing white powder substance contained inside a black and clear vacuum sealed bag.
4. E81 Green leafy substance in vacuum sealed clear and black bag.
5. E82 Blue Samsonite Suitcase

07-23-2024
Date

Detective Christopher Griffin
Brinkley Police Department

JUDGE